

IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A | § | |
| MEMBER OF THE BAR OF THE | § | No. 420, 2019 |
| SUPREME COURT OF | § | |
| DELAWARE: | § | Board Case No. 114511-R |
| | § | |
| CHRISTOPHER D. TEASE, | § | |
| | § | |
| Respondent. | § | |

Submitted: October 7, 2019
Decided: October 15, 2019

Before **VALIHURA**, **VAUGHN**, and **TRAYNOR**, Justices.

*PER CURIAM*:

## ORDER

It appears to the Court that:

(1) On July 17, 2019, this Court accepted the recommendation of a panel of the Board on Professional Responsibility ("the Board") and suspended the respondent, Christopher D. Tease, from the practice of law in Delaware for a period of eighteen months, retroactive to November 20, 2014 (the date Tease transferred to disability inactive status).[1] The Court also accepted the Board's recommendation that Tease serve a one-year forward-looking period of probation, with conditions, to commence upon Tease's

---

[1] *In re Tease*, No. 237, 2019, Order at 2 (Del. July 17, 2019).

reinstatement, if he were reinstated.[2]  The July 17, 2019 Order was stayed pending consideration of Tease's petition for reinstatement.[3]

(2)    Tease filed a petition for reinstatement with the Board.  In its answer, the Office of Disciplinary Counsel ("ODC") took no position on the petition.  On July 11, 2019, the Board held a hearing on Tease's petition for reinstatement.   ODC stated that, following additional investigation and research, it supported the petition.

(3)    On October 4, 2019, the Board filed its Report with the Court, recommending that Tease be reinstated to the Bar, subject to the one-year probation period with conditions imposed by the July 17, 2019 Order.  The Office of Disciplinary Counsel and Tease have informed the Court that they will not be filing any objections to the Report.

(4)    The Court has considered the matter carefully.  The Court has determined that the Board's Report should be adopted in its entirety.  The stay of the July 17, 2019 Order is lifted and the July 17, 2019 Order shall go into effect on the date of this Order.

NOW, THEREFORE, IT IS ORDERED that the Board's Report (which is attached as Exhibit A) is hereby ACCEPTED.  Christopher D.

---

[2] *Id.* at 2-4.
[3] *Id.* at 4.

Tease, Esquire shall be reinstated as a member of the Bar of this Court, subject to the one-year probation period with conditions imposed by the July 17, 2019 Order (which is attached as Exhibit B).

EFiled:  Oct 15 2019 03:50PM EDT
Filing ID 64318975
Case Number 237,2019

# Exhibit A

# BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF DELAWARE

In the Matter of a )
Member of the Bar of the ) **CONFIDENTIAL**
Supreme Court of Delaware: )
) Board Case No. 114511-R
**CHRISTOPHER D. TEASE,** )
)
Petitioner. )

## REPORT OF THE BOARD ON THE PETITION FOR REINSTATEMENT

Pending before a panel of the Board on Professional Responsibility ("the Board") is an Amended Petition for Reinstatement ("the Petition") filed by Christopher D. Tease, Esquire ("the Petitioner") on June 19, 2019 in Board Case No. 114511-R. The Office of Disciplinary Counsel ("ODC") filed an Answer to the Petition on June 21, 2019. The Answer indicated that ODC took no position on the Petition.

This is the Report and Recommendation of the Board in this matter. The Board convened a hearing ("the Hearing") on July 11, 2019.[1] The members of the panel of the Board were John D. Shevock, Gerald J. Hager, Esquire, and Seth L. Thompson, Esquire, Chair (the "Panel"). Matthew F. Boyer, Esquire, represented the Petitioner. Kathleen M. Vavala, Esquire, represented ODC. Matthew F. Boyer, Esquire, represented the Petitioner.

_____

[1] The transcript of the July 11, 2019 hearing is cited herein as "Tr. at ___."

1

## I. *Procedural Background*

On November 19, 2014, the Petitioner filed a Petition for Transfer to Disability Inactive Status, pursuant to Rule 19 of the Delaware Lawyers' Rules of Disciplinary Procedure, alleging he was suffering from an emotional disability that impaired his ability to practice law. ODC did not oppose that petition. By Order dated November 20, 2014, the Supreme Court transferred the Petitioner to disability inactive status and stayed an underlying disciplinary proceeding.

On February 20, 2018, the Petitioner petitioned the Supreme Court to resume active status. ODC did not oppose the Petitioner's transfer to active status pending resolution of the disciplinary proceeding that had been stayed, provided certain conditions were imposed on the Respondent's law practice. By Order dated February 22, 2018, the Supreme Court lifted the stay on the prior disciplinary proceedings and transferred the Respondent back to active status with certain conditions.

On November 8, 2018, ODC filed a Petition for Discipline against the Petitioner. The Board held a hearing on February 14, 2019 on that petition and issued a report on June 4, 2019. The Supreme Court, by Order dated July 17, 2019, accepted the Board's recommendation and suspended the Petitioner for a period of 18 months, retroactively running from November 20, 2014, the date when Petitioner transferred to disability inactive status. The Supreme Court also ordered that, if the

2

Petitioner is reinstated, he shall be subject upon reinstatement to a one-year period of probation with the following conditions:

a. The Petitioner is prohibited from engaging in the solo practice of law;

b. The Petitioner shall not act as managing partner in charge of books and records of a firm, and after the expiration of the probation period, the Petitioner shall notify ODC if he resumes responsibility for the books and records of a firm;

c. The Petitioner shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review the Petitioner's legal work and cases and the practice monitor would provide quarterly reports to ODC regarding the Petitioner's compliance with the conditions of reinstatement;

d. The Petitioner shall notify any employer of these conditions;

e. The Petitioner shall continue to cooperate with DE-LAP pursuant to a formal monitoring agreement and comply with all conditions deemed appropriate by DE-LAP;

f. The Petitioner shall continue counseling with Alice O'Brien, or another appropriate, licensed mental health professional approved by DE-LAP, at whatever intervals are deemed appropriate or until discharged by the mental health professional and complete all therapy programs recommended by the mental health professional, and the Petitioner shall execute a waiver of the doctor-patient privilege so that the mental health professional may provide a report to DE-LAP and ODC, and any missed appointments are to be reported immediately to DE-LAP and ODC;

g. The Petitioner must pay costs to ODC;

3

h.      The Petitioner must timely file all required reports to the Supreme Court and its regulatory agencies and promptly comply with, or respond to, all inquiries or requests for information from all Supreme Court agencies, and the Petitioner's failure to do so will result in a violation of this condition;

i.      The Petitioner shall report any violations of the conditions of his reinstatement to the ODC directly; and,

j.      The Petitioner shall cooperate promptly and fully with ODC in its efforts to monitor compliance with his conditions of reinstatement. The Petitioner shall cooperate with ODC's investigation of any allegations of unprofessional conduct which may come to the attention of ODC. Upon request of ODC, the Petitioner shall provide authorization for release of information and documentation, to the extent not granted above, to verify compliance with the conditions of reinstatement.

The Supreme Court stayed the effectiveness of its July 17, 2019 Order pending the Court's consideration of the Petition, with the July 17, 2019 Order going into effect on the date of the Court's final decision on the Petition now pending.

At the outset of the Hearing, ODC indicated that, following additional investigation and research, it had concluded to support the Petition and recommended that the Petitioner be welcomed back into the Bar.[2]

At the Hearing, the Panel received into evidence as Joint Exhibit No. 1 a

---

2 Tr. at 11-12.

4

binder with: a Stipulation of Facts; the transcript from the Board hearing on February 14, 2019; the Board Report and Recommendation of June 4, 2019; Alice O'Brien's letter to ODC dated February 11, 2019; Carol Waldhauser's DE-LAP Report to ODC dated February 13, 2019; and the Practice Monitor Reports from Eugene Maurer, Esquire dated October 2, 2018, January 14, 2019, and May 29, 2019.[3] The Panel also received Joint Exhibit No. 2, a letter dated July 11, 2019 from Carol Waldhauser as an updated DE-LAP Report.[4] The Board also heard testimony from the Petitioner.

On August 5, 2019, the Panel received a transcript of the Hearing.

II. *Background*

The Petitioner was admitted to practice in the Supreme Court of Delaware in 1996.[5] Prior to his transfer to disability inactive status in 2014, the Petitioner was struggling at work, experiencing anxiety and depression and using alcohol as a coping mechanism.[6] In November 2014, shortly before the transfer to disability inactive status, the Petitioner sought treatment at the Volpicelli Center in Norristown, Pennsylvania.[7] There, he was diagnosed with depression and substance

---

[3] Tr. at 16-17.
[4] *Id.*
[5] Jt. Exh. 1 at Tab 1, p. 1.
[6] Tr. at 18, 21.
[7] Tr. at 22.

5

abuse disorder.[8]

In 2015, the Petitioner located employment in the golf industry, in which he had worked many years before.[9] The Petitioner moved out of his marital home in April 2016 and, in June of that year, felt ready to seek reentry into the legal practice.[10] The Petitioner reached out to ODC and DE-LAP and began therapy with Paula Tropiano in West Chester, Pennsylvania, which the Petitioner described as "very intense."[11] The therapy sessions ended a period of approximately six months in 2016 when the Petitioner was not under the care of a treating therapist.[12] In March 2017, the Petitioner changed from Ms. Tropiano to Alice O'Brien, seeing her initially biweekly and then monthly.[13] In addition, the Petitioner attended about six months of group therapy and attended Alcoholics Anonymous until shortly before the Hearing.[14] The Petitioner also entered into a Monitoring Agreement with DE-LAP, which was initially discussed in September 2016 and formally executed on November 1, 2016.[15] The Petitioner then entered into an updated Monitoring Agreement on March 6,

---

[8] Jt. Exh. 1 at Tab 1, p. 4.
[9] Tr. at 22.
[10] Tr. at 23.
[11] Tr. at 23-24.
[12] Jt. Exh. 1 at Tab 1, p. 4.
[13] Tr. at 24-25.
[14] Tr. at 25.
[15] Tr. at 25; Jt. Exh. 1 at Tab D.

6

2018, which runs for two years from that date.[16]

The Petitioner asked the Court to transfer him to active status in February 2018.[17] By that date, he had returned to treatment, addressed his marital issues and had gone without a drink "cold turkey" for about eighteen months. The Supreme Court conditionally transferred the Petitioner back to active status by Order dated February 22, 2018, and he has continued to practice under those conditions.[18]

Two days later, on February 24, 2018, the Petitioner became employed by Brown, Shiels & Beauregard, where the Petitioner was an associate until July 5, 2018.[19] During that month, the Petitioner joined Eugene J. Maurer, Jr., P.A. as an associate attorney working directly under Mr. Maurer's supervision and exclusively handling criminal defense matters.[20] The Petitioner handles matters assigned by the Office of Conflicts Counsel in Kent and Sussex Counties.[21] While the Petitioner handles felony matters, he works mostly outside of Superior Court.[22] This includes working with youth, and the Petitioner seeks to assist the

---

16 Jt. Exh. 1 at Tab D.
17 Tr. at 26-27.
18 Jt. Exh. 1 at Tab 1, p. 2.
19 Jt. Exh. 1 at Tab 1, p. 5.
20 Jt. Exh. 1 at Tab 1, p. 5.
21 Tr. at 31-32.
22 Tr. at 44.

7

clients and their parents.[23]

In addition to the employment relationship, Mr. Maurer serves as the Petitioner's practice monitor, a role which reached its one-year anniversary on the day after the Hearing.[24] The Petitioner provides to his practice monitor a daily memorandum of his activities.[25] Prior to Mr. Maurer, John Garey, Esquire, served in that capacity.[26]

Since his conditional transfer to active status, the Petitioner continues with therapy and has substantially complied with all treatment instructions.[27] He has attended substantially all appointments with his therapists.[28] In early 2019, Ms. O'Brien approved the Petitioner's sessions to continue on an as-needed basis.[29] The Petitioner continues his weekly contact with Ms. Waldhauser and meets with her in-person on a monthly basis.[30] Over the past year and a half, he has fully complied with the conditions of his transfer back to active status in February 2018.[31]

---

23 Tr. at 44.
24 Tr. at 28.
25 Tr. at 29.
26 Tr. at 28.
27 Jt. Exh. 1 at Tab 1, p. 4.
28 Jt. Exh. 1 at Tab 1, p. 4.
29 Tr. at 29.
30 Tr. at 29.
31 Jt. Exh. 1 at Tab 1, p. 4.

The Petitioner has taken eleven credit hours of continuing legal education ("CLE") over the past fifteen months, mostly focusing on criminal law. He is in a position to fulfill his CLE requirements for the 2018-2109 reporting period.[32] In addition, he keeps abreast on legislative and procedural changes via the Office of Conflicts Counsel and the Public Defender's Office, as well as through interaction at the courthouse with his colleagues handling criminal matters.

The Petitioner reports not experiencing depression and is actively controlling his practice to keep his anxiety level in check.[33] Since returning to active status, there have been no allegations or findings of dishonest or wrongful conduct on Petitioner's part.[34] Neither the Petitioner nor ODC is aware of any professional misconduct in another jurisdiction since the Petitioner returned to active status.[35]

III. *Analysis*

To earn reinstatement, the Petitioner must prove by clear and convincing evidence each of the eight elements set forth in Delaware Lawyers' Rule of Disciplinary Procedure 22(g), as follows:

(a) The petitioner's professional rehabilitation, including substantial rehabilitation from any drug or alcohol problem from which the petitioner had suffered

---

[32] Jt. Exh. 1 at Tab 1, p. 6.
[33] Tr. at 37.
[34] Jt. Exh. 1 at Tab 1, p. 4.
[35] Jt. Exh. 1 at Tab 1, p. 6.

9

The Petitioner was open and frank about how his mental health and substance abuse contributed to his prior professional misconduct. "[T]he mere passage of time during which petitioner leads a good life free of criminal conduct and ethical misdeeds is not proof of professional rehabilitation or of current professional competence." *In re Reed*, 584 A.2d 1207, 1209 (Del. 1990). The specific underlying mental condition or diagnosis is not critical; rather, the issue is whether steps to address the conduct leading to the discipline have been taken in an appropriate manner. *In re Poliquin*, 135 A.3d 1282 (Table), 2016 WL 1426969, at *9 (Del. 2016) (adopting the Board's Report) (citation omitted).

In this matter, the uncontroverted evidence supports the Petitioner's professional rehabilitation, including rehabilitation of the contributory issues related to his mental health and substance abuse. The Petitioner has maintained sobriety for over two years and has substantially complied with all treatment instructions. He continues to avail himself of resources to monitor his mental health status and sobriety. Professionally, he has put himself in a position to succeed, where he can be of service to his clients and the public.

<u>(b) The petitioner's compliance with all applicable disciplinary orders and other rules, including conditions of restitution</u>

The evidence reflects that the Petitioner has maintained full compliance, including with the conditions of his transfer back to active status in February 2018, and the Petitioner has complied with all of the requests of ODC.

## (c) The petitioner's fitness to practice

Following a synopsis of the Respondent's treatment with her and of the Petitioner's activities and parameters in his personal and professional life, Ms. O'Brien concludes in stating that she is "confident that Mr. Tease is committed to and capable of the practice of law in full compliance with the ethics and standards required by the Delaware Bar."[36] The Petitioner's testimony and the other documentary evidence support this conclusion, too. Ms. Waldhauser expressed similar sentiments in indicating her belief that "Mr. Tease's prognosis for continued success in implementing his action steps for change as well as continued success in living a clean, resilient life, are very good with the safeguards he has placed...."[37]

---

36 Jt. Exh. 1 at Tab C.
37 Jt. Exh. 2.

11

**(d) The petitioner's overall competence and current awareness of recent developments in the law**

The Petitioner has availed himself of Mr. Maurer's knowledge and guidance, as well as the information distributed by the Office of Conflicts Counsel and the Public Defender's Office on legal developments, as well as via CLE programs. In addition, the Petitioner has been actively handling criminal defense matters under his conditional transfer back to active status.

**(e) The petitioner has not engaged in any other professional misconduct in any jurisdiction since suspension or disbarment**

The evidence reflects that the Petitioner has not engaged in any other professional misconduct in any jurisdiction since suspension.

**(f) The petitioner sincerely recognizes the wrongfulness and seriousness of any misconduct upon which the suspension or disbarment was predicated**

The Petitioner sincerely testified as to his recognition of the wrongfulness and seriousness of the misconduct that led to his suspension. He expressed remorse, especially in the matter of an untimely appeal for a young man who had not previously been involved in the criminal justice system.[38]

---

[38] Tr. at 40-43.

**(g) The petitioner has the requisite honesty and professional integrity to resume the practice of law**

The statements submitted into evidence and ODC attested to Petitioner's honesty and professional integrity. Likewise, in his testimony, the Respondent took full responsibility for mishandling individual matters addressed in the Board's report that was accepted by the Supreme Court's Order of July 17, 2019. The Petitioner continued to display the honesty and the accountability inherent in professional integrity throughout the Hearing.

**(h) The petitioner's resumption of the practice of law will not be detrimental to the administration of justice**

The Petitioner demonstrated his understanding of why he was before the Board and his commitment to his personal and professional rehabilitation, such that he will avoid becoming a detriment to the administration of justice.

**IV.** *Conclusion*

The Petitioner has met his burden of proof, and the Panel recommends to the Supreme Court of Delaware that the Petitioner be reinstated to the Bar, subject to the one-year probation period with conditions imposed by the Order dated July 17, 2019.

13

Respectfully submitted,

Seth L. Thompson, Esquire, Chair
Date: 9/27/19

Gerald J. Hager, Esquire     9/27/2019
Date:

John D. Shevock
Date:

Respectfully submitted,

_____  ʼ
Seth L. Thompson, Esquire, Chair
Date:_____


_____
Gerald J. Hager, Esquire
Date:_____


_____
John D. Shevock
Date: 9/27/2019

EFiled: Oct 15 2019 03:50PM EDT
Filing ID 64318975
Case Number 237,2019

# Exhibit B



IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| IN THE MATTER OF A | § | |
| MEMBER OF THE BAR OF THE | § | No. 237, 2019 |
| SUPREME COURT OF | § | |
| DELAWARE: | § | Board Case Nos. 112172-B; 112890-B; |
| | § | 112244-B; 111931-B |
| CHRISTOPHER D. TEASE, | § | |
| | § | |
| Respondent. | § | |

Submitted: June 12, 2019
Decided: July 17, 2019

Before **STRINE**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

***PER CURIAM:***

## ORDER

It appears to the Court that:

(1) This is a lawyer disciplinary proceeding. On June 4, 2019, a panel of the Board on Professional Responsibility ("the Board") filed its Report with this Court, recommending, as agreed by the parties, that the respondent, Christopher D. Tease, be suspended from the practice of law in Delaware for a period of eighteen months, retroactive to November 20, 2014 (the date Tease transferred to disability inactive status) and serve a one-year forward-looking period of probation, with conditions, to commence upon Tease's reinstatement, if he is reinstated. The Board further recommended that this Court's order be stayed pending the Court's consideration of Tease's

petition for reinstatement. Neither the ODC nor Tease has filed any objections to the Board's report.

(2) The Court has considered the matter carefully. The Board carefully considered Tease's ethical violations, his state of mind, the potential injury and actual injury, the aggravating and mitigating factors, and the recommended sanction. Under the circumstances, we find the Board's recommendation to be appropriate. We therefore accept the Board's findings and recommendation for discipline.

NOW, THEREFORE, IT IS ORDERED that the Board's Report filed on June 4, 2019 is hereby APPROVED.

1. Christopher D. Tease is hereby SUSPENDED from the practice of law in Delaware for a period of 18 months, with such suspension to run retroactively from November 20, 2014, the date he was transferred to disability inactive status.

2. If Tease is reinstated, he shall be subject upon reinstatement to a one-year period of probation with the following conditions:

> (a) Respondent is prohibited from engaging in the solo practice of law.
>
> (b) Respondent shall not act as managing partner in charge of books and records of a firm. After the expiration of the probation period, Respondent shall notify the ODC if he resumes responsibility for the books and records of the firm.

2

(c)     Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review Respondent's legal work and cases and the practice monitor will provide quarterly reports to ODC regarding Respondent's compliance with the conditions of reinstatement.

(d)     Respondent shall notify any employer of these conditions.

(e)     Respondent shall continue to cooperate with DE-LAP pursuant to a formal monitoring agreement and comply with all conditions deemed appropriate by DE-LAP.

(f)     Respondent shall continue counseling with Alice O'Brien, or another appropriate, licensed mental health professional approved by DE-LAP, at whatever intervals are deemed appropriate or until discharged by, the mental health professional and complete all therapy programs recommended by the mental health professional. Respondent shall execute a waiver of the doctor-patient privilege so that the mental health professional may provide a report to DE-LAP and ODC. Any missed appointments are to be reported immediately to DE-LAP and ODC.

(g)     Respondent must pay costs to ODC.

(h)     Respondent must timely file all required reports to the Supreme Court and its regulatory agencies and promptly comply with, or respond to, all inquiries or requests for information from all Supreme Court agencies. Respondent's failure to do so will result in a violation of this condition.

(i)     Respondent shall report any violations of the conditions of his reinstatement to the ODC directly.

3

(j)     Respondent shall cooperate promptly and fully with ODC in its efforts to monitor compliance with his conditions of reinstatement. Respondent shall cooperate with ODC's investigation of any allegations or unprofessional conduct which may come to the attention of ODC. Upon request of ODC, Petitioner shall provide authorization for release of information and documentation, to the extent not granted above, to verify compliance with the conditions of reinstatement.

3.     Tease shall pay the cost of the disciplinary proceedings.

4.     The Office of Disciplinary Counsel shall disseminate this Order in accordance with Rule 14 of the Delaware Lawyers' Rules of Disciplinary Procedure.

5.     The effectiveness of this Order shall be stayed pending the Court's consideration of Tease's petition for reinstatement, during which time Tease shall remain subject to the conditions of this Court's February 22, 2018 transferring him to active status.

6.     This Order shall go into effect on the date of the Court's final decision on Tease's petition for reinstatement.

4

## BOARD ON PROFESSIONAL RESPONSIBILITY
## OF THE SUPREME COURT OF DELAWARE

| | | |
|---|---|---|
| In the Matter of a | ) | |
| Member of the Bar of the | ) | **CONFIDENTIAL** |
| Supreme Court of Delaware: | ) | |
| | ) | Board Case Nos. 112172-B; |
| | ) | 112890-B; 112244-B; 111931-B |
| **CHRISTOPHER D. TEASE,** | ) | |
| | ) | |
| Respondent. | ) | |

## REPORT OF THE BOARD ON THE PETITION FOR DISCIPLINE

Pending before a panel of the Board on Professional Responsibility ("the Board") is an Amended Petition for Discipline filed by the Office of Disciplinary Counsel ("ODC") on April 8, 2019 in Board Case Nos. 112172-B, 112890-B; 112244-B; 111931-B ("the Amended Petition") against Christopher D. Tease, Esquire ("the Respondent"), a member of the Bar of the Supreme Court of the State of Delaware. The Petition alleged violations of Rules 1.1, 1.3, 1.4, 1.5(f), 1.15(a), 1.15(d), 3.4(c), 8.4(c), and 8.4(d) of the Delaware Lawyers' Rules of Professional Conduct ("the Rules"). Respondent, through counsel, filed an Answer to the Amended Petition on April 17, 2019 ("the Amended Answer"). The Board convened a hearing ("the Hearing") by the panel on February 14, 2019.[1] The members of the panel of the Board were Gary Ferguson, Gerald J. Hager, Esquire,

---

[1] The transcript of the February 14, 2019 hearing is cited herein as "Tr. at ___."

1

and Seth L. Thompson, Esquire, Chair (the "Panel"). Kathleen M. Vavala, Esquire, represented ODC. Matthew F. Boyer, Esquire, represented the Respondent. On April 4, 2019, ODC and the Respondent filed a Joint Memorandum Regarding Admitted Facts, Rule Violations, and Recommended Sanction ("the Joint Memorandum"). This is the Board's report.

I.  *Procedural Background*

On November 19, 2014, the Respondent filed a Petition for Transfer to Disability Inactive Status, pursuant to Rule 19 of the Delaware Lawyers' Rules of Disciplinary Procedure, alleging he was suffering from an emotional disability that impaired his ability to practice law. ODC did not oppose the Respondent's petition. By Order dated November 20, 2014, the Supreme Court transferred the Respondent to disability inactive status and stayed the underlying disciplinary proceedings.

On February 20, 2018, the Respondent petitioned the Supreme Court to resume active status. ODC did not oppose the Respondent's transfer to active status pending resolution of these disciplinary cases, provided certain conditions were imposed on the Respondent's law practice. By Order dated February 22, 2018 in Case No. 86, 2018, the Supreme Court lifted the stay on the disciplinary proceedings and transferred the Respondent back to active status with the following conditions:

> a.  The Respondent is prohibited from engaging in the solo practice of law;

2

b. The Respondent shall not act as managing partner in charge of books and records of a firm;

c. The Respondent shall notify any employer of these conditions;

d. The Respondent shall remain in active treatment with a licensed mental health treatment provider;

e. The Respondent shall execute a formal monitoring agreement with DE-LAP and comply with all conditions deemed appropriate by DE-LAP;

f. The Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review Respondent's legal work and cases and the practice monitor would provide quarterly reports to ODC regarding the Respondent's compliance with the conditions of reinstatement;

g. The Respondent shall report any violations of the conditions of his reinstatement to the ODC directly; and

h. The Respondent shall cooperate promptly and fully with ODC in its efforts to monitor compliance with his conditions of reinstatement. The Respondent shall cooperate with ODC's investigation of any allegations of unprofessional conduct which may come to the attention of ODC. Upon request of ODC, the Respondent shall provide authorization for release of information and documentation, to the extent not granted above, to verify compliance with the conditions of reinstatement to active status. If the ODC, after giving Tease notice and an opportunity to respond, concludes that Tease has violated his conditions, then it may file a petition directly to this Court requesting Tease's suspension or transfer to disability inactive status.

On November 8, 2018, ODC filed a Petition for Discipline ("the Petition")

3

against the Respondent for violation of Rules 1.1, 1.3, 1.4, 1.5(f), 1.15(a), 1.15(d), 3.4(c), 8.4(c), and 8.4(d) regarding misconduct that occurred prior to the Respondent's transfer to disability inactive status. The Respondent's Answer to the Petition generally admitted the facts and Rules violations alleged in the Petition.

At the outset of the Hearing, ODC moved to amend the Petition, with the consent of the Respondent, to remove some of the allegations regarding the Respondent's professional conduct related to one client. In addition to correcting a typographical error in a date, the purpose of the amendment was based upon the parties' dispute regarding the interpretation of Delaware Supreme Court Rule 26(a) in application to private counsel.[2] The amendment did not change the type or number of Rules violations alleged. The Board allowed the amendment.[3] On April 8, 2019, ODC filed the Amended Petition, which reflects the amendments approved by the Board. On April 17, 2019, the Respondent, through counsel, filed an Answer to the Amended Petition admitting all of the facts and Rules violations alleged in the Amended Petition. ODC and the Respondent's counsel submitted by letter dated May 6, 2019, a joint request that the Panel include in its recommendations to the Supreme Court a stay of the effectiveness of the Order in these proceedings until the date of the Court's resolution of the Respondent's petition for reinstatement,

---

2 Tr. at 8.
3 Tr. at 10.

4

pursuant to Supreme Court Rule 63.

Because the Respondent's Answer had admitted the violations alleged in the Petition, ODC, the Respondent, and the Panel treated the hearing as relating primarily to sanctions. At the Hearing, the Panel received into evidence a joint exhibit book with Exhibits 1-13.[4] During testimony, the Respondent admitted all of the facts and Rules violations alleged in the Amended Petition, including Rules 1.1, 1.3, 1.4, 1.5(f), 1.15(a), 1.15(d), 3.4(c), 8.4(c), and 8.4(d).[5] Thereafter, the Board unanimously found clear and convincing evidence to support the violations alleged in the Amended Petition.[6]

The Board also heard testimony relevant to the issue of sanctions from the Respondent, Eugene Maurer, Esquire,[7] Carol Waldhauser, Executive Director of the Delaware Lawyers' Assistance Program ("DE-LAP"),[8] and reviewed a letter submitted by from Alice O'Brien, MS, NCC, LPCMH,[9] a licensed mental health counselor treating the Respondent.

II.  *Factual Findings*

Based on the factual allegations of the Amended Petition admitted by the

---

[4] Tr. at 26.
[5] Tr. at 28-29.
[6] Tr. at 46.
[7] Tr. at 11-19.
[8] Tr. at 88-96; *see also* Ex. 13.
[9] *See* Ex. 12.

5

Respondent and the credible uncontroverted testimony received at the Hearing from the submitted exhibits and the testimony of the Respondent and the other witnesses, the Board makes the factual findings which follow:

1. Respondent was admitted to practice in the Supreme Court of Delaware in 1996.[10] At all times relevant to the Counts in the Petition, he was engaged in the private practice of law in Delaware.[11]

2. In late 2010 or early 2011, Marvin Burroughs retained the Respondent to represent him in a Superior Court motion for postconviction relief.[12] Mr. Burroughs paid the Respondent an advance fee of approximately $800.[13] The Respondent deposited the advance fee directly into his Attorney Operating Account prior to earning the full fee.[14] The Respondent did not provide Mr. Burroughs with a written fee agreement.[15] The Respondent filed Mr. Burroughs's Motion for Postconviction Relief in Superior Court. The Respondent verbally advised Mr. Burroughs an additional attorney's fee would be required for the Respondent to represent Mr. Burroughs on a postconviction appeal. On October 17, 2013, the Superior Court denied Mr. Burroughs's

---

[10] Tr. at 26-27.
[11] Tr. at 27-28.
[12] Tr. at 33.
[13] *Id.*
[14] *Id.*
[15] *Id.*

6

Motion for Postconviction Relief. By letter dated October 22, 2013, the Respondent provided Mr. Burroughs a copy of the Superior Court order denying postconviction relief, advised Mr. Burroughs he had thirty (30) days to file an appeal, and terminated his representation.[16] On February 11, 2014, the Supreme Court issued a Notice to Show Cause as to why Mr. Burroughs's *pro se* appeal (filed in the wrong court) should not be dismissed pursuant to Supreme Court Rule 29(b). On March 4, 2014, the Respondent advised the Supreme Court that he was "ineffective in failing to file a Notice of Appeal" and admitted he did not consult with Mr. Burroughs to determine whether he wished to file an appeal.[17]

3. In 2013, the family of Korey Thomas retained the Respondent to represent Mr. Thomas in a Superior Court motion for postconviction relief.[18] Mr. Thomas paid the Respondent an advance fee of $1000.[19] The Respondent deposited the advance fee directly into his Attorney Operating Account prior to earning the full fee.[20] The Respondent did not provide Mr. Thomas with a written fee agreement.[21] On July 22, 2013, the Respondent filed Mr. Thomas's Motion for Postconviction Relief in Superior Court.[22] On August 27, 2013, the

---

[16] *See* Ex. 1.
[17] *See* Ex. 2; Tr. at 34.
[18] Tr. at 34.
[19] *Id.*
[20] Tr. at 34-35; Ex. 3.
[21] Tr. at 34-35; Ex. 3.
[22] Tr. at 35 and Ex. 3.

7

Respondent advised the Superior Court he intended to withdraw Mr. Thomas's motion and would "get a letter to the Court ... immediately."[23] The Respondent did not consult with Mr. Thomas regarding withdrawing the motion.[24] Unaware of the status of his motion, Mr. Thomas filed a *pro se* Motion for Postconviction Relief on July 28, 2014. The Respondent did not file a letter in the Superior Court withdrawing Mr. Thomas's original motion until October 16, 2014.[25]

4.    In 2013, Mark Zambrana retained the Respondent to represent him in a criminal matter in Superior Court.[26] Mr. Zambrana paid the Respondent an advance fee of $1,500.[27] The Respondent deposited the advance fee directly into his Attorney Operating Account prior to earning the full fee.[28] The Respondent did not provide Mr. Zambrana with a written fee agreement.[29] Mr. Zambrana was convicted and sentenced by Superior Court on November 8, 2014.[30] Mr. Zambrana told the Respondent he wished to appeal his conviction and sentence to the Supreme Court.[31] The Respondent told Mr. Zambrana he would file an appeal, but the Respondent failed to file a Notice of Appeal in the Supreme

---

[23] Tr. at 35 and Ex. 4.
[24] Tr. at 36, 57.
[25] Tr. at 35-36 and Ex. 5.
[26] Tr. at 36.
[27] Tr. at 36.
[28] Tr. at 36-37 and Ex. 6.
[29] Tr. at 37.
[30] Tr. at 37.
[31] Tr. at 37.

8

Court.[32] The Respondent advised the Superior Court, "There was a failure by counsel to meet the 30-day requirement for the filing of an appeal to the Delaware Supreme Court."[33] On September 25, 2014, the Respondent moved Superior Court to re-sentence Mr. Zambrana to re-start the appeal clock and admitted he "missed the filing of the appeal for no good cause."[34]

5.     At all times relevant to the Amended Petition, the Respondent was a solo practitioner engaged in the private practice of law in Wilmington, Delaware, with primary responsibility for the books and record keeping of his firm.[35]

6.     Delaware lawyers are obligated to file a Certificate of Compliance with the Supreme Court of Delaware certifying to the Court the lawyer is properly maintaining the law practice books and records in compliance with the specific requirements of Rule 1.15.[36]

7.     The Respondent's 2014 Certificate of Compliance filed with the Supreme Court includes misrepresentations regarding the status of the Respondent's law practice's books and records. Specifically, the Respondent answered "YES" to

---

[32] Tr. at 37-38.
[33] Tr. at 37 and Ex. 7.
[34] Ex. 8.
[35] Tr. at 28, 40.
[36] Tr. at 42.

questions 2.6, 2.9 and 2.15, but should have answered "NO," and omitted fiduciary account ██████ 569 from his list of trust/escrow accounts in Question 3.1.[37]

8.    The Lawyers' Fund for Client Protection ("LFCP") conducted an audit of the Respondent's firm's books and records for the six-month period ending June 30, 2014.[38] The LFCP Audit Report revealed the Respondent failed to maintain his law practice books and records for that time period as follows:

<u>Fiduciary Account # ██████ 0156</u>

(a)    There were no cash receipts or cash disbursements journals;

(b)    For two months, the bank reconciliations did not agree to the related general ledger balances;

(c)    There were no monthly client balances;

(d)    The reconciled end of the month cash balances could not be agreed to the total client funds held because monthly listings of client balances were not prepared;

(e)    For two months, there was a negative balance in the monthly listing of client funds;

(f)    There was no documentation for five (5) disbursements selected for the audit;

(g)    There was no fee agreement for four (4) clients selected for the audit; and

(h)    There were no statements to the clients showing the amount withdrawn and remaining balance of unearned

---

[37] Tr. 43-44 and Ex. 9.
[38] Exhibit 10.

10

retainers for five (5) clients.

Operating Account #▓▓▓▓3203

(a)     There were no cash receipts and cash disbursements journals; and

(b)     Proper bank reconciliations were not prepared. [39]

## III. *Standard of Proof*

Allegations of professional misconduct must be established by ODC by clear and convincing evidence.[40]

## IV. *Findings on Violations of the Rules*

Based on the Respondent's admissions and the evidence provided at the Hearing, the Panel finds that ODC has met its burden. Specifically, the Amended Petition alleges, and the Answer thereto admits, twelve violations of nine separate Rules, specifically, Rules 1.1, 1.3, 1.4, 1.5(f), 1.15(a), 1.15(d), 3.4(c), 8.4(c) and 8.4(d), as follows:

**Count I:** Rule 1.1 requires that an attorney "shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation." By failing to file a Notice of Appeal in the Supreme Court in

---

[39] Exhibit 10.

40 Delaware Lawyers' Rule of Disciplinary Procedure 15(c).

the Zambrana matter, Respondent failed to provide competent representation in violation of Rule 1.1.[41]

Count II: Rule 1.3 requires that an attorney "shall act with reasonable diligence and promptness in representing a client." By failing to file a Notice of Appeal in the Supreme Court in the Zambrana matter and/or failing to file a letter in Superior Court withdrawing Mr. Thomas's original Motion for Postconviction Relief for over a year, the Respondent failed to act with reasonable diligence in violation of Rule 1.3.[42]

Count III: Rule 1.4 requires that "[a] lawyer shall... keep the client reasonably informed about the status of the matter." By failing to consult with Mr. Thomas before withdrawing his Motion for Postconviction Relief, the Respondent admitted he violated Rule 1.4.[43]

Count IV: Rule 1.5(f) requires that an attorney "may require the client to pay some or all of the fee in advance of... the representation, provided... the lawyer shall provide the client with a written statement...." By accepting advance fees and failing to provide Mssrs. Burroughs, Zambrana and Thomas with a written fee agreement, the Respondent violated Rule 1.5(f).[44]

---

[41] Tr. at 38.
[42] Tr. at 38.
[43] Tr. at 38-39.
[44] Tr. at 39.

12

**Count V:** Rule 1.15(a) requires that an attorney shall safeguard property of clients or third persons in his possession. By failing to place the unearned advance fees from Burroughs, Zambrana and Thomas matters in an attorney trust account, the Respondent admitted failed to safeguard client funds in violation of Rule 1.15(a).[45]

**Count VI:** Rule 3.4(c) requires that a lawyer shall not "knowingly disobey an obligation under the rules of the tribunal...." By failing to file a Notice of Appeal in the Zambrana matter, as required by Supreme Court Rule 26(a), the Respondent violated Rule 3.4(c).[46]

**Count VII:** Rule 8.4(d) states that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." By failing to file a Notice of Appeal in the Supreme Court in the Zambrana matter, as required by Supreme Court Rule 26(a), the Respondent violated Rule 8.4(d).[47]

**Count VIII:** Rule 1.15(a) requires that a lawyer holding the property of clients or third persons shall identify and appropriately safeguard such property, and shall maintain complete records of such property for a period of five (5) years after the completion of the events that they record. By failing to identify and safeguard

---

[45] Tr. at 39.
[46] Tr. at 39-40.
[47] Tr. at 39-40.

13

client funds, which resulted in negative balances in fiduciary account #■■■0156 as detailed in the LFCP Audit Report, the Respondent violated Rule 1.15(a).[48]

Count IX: Rule 1.5(f) states that "[a] lawyer may require the client to pay some or all of the fee in advance of the lawyer undertaking the representation, provided that... [t]he lawyer shall provide the client with a written statement...." By failing to provide clients with written fee agreements and/or failing to provide clients with a written statement of the fees earned at the time funds held in trust were withdrawn from the trust account, Respondent violated Rule 1.5(f).[49]

Count X: Rule 1.15(d) provides detailed and specific requirements for the maintenance of lawyer's books and records and handling of practice-related funds. The Respondent admitted he failed to properly maintain his books and records in violation of Rule 1.15(d) as follows: (1) there were no cash receipts or cash disbursement journals; (2) the Respondent's bank reconciliations did not agree to the general ledger balances; (3) monthly client balances were not prepared; (4) the Respondent's end of the month cash balances did not agree to total of client funds held because monthly balances were not prepared; and (5) there were negative balances on the monthly listing of client funds.[50]

---

[48] Tr. at 41–42.
[49] Exhibit 10.
[50] Exhibit 10.

14

**Count XI:** Rule 8.4(c) provides that it is professional misconduct for a lawyer to "engage in conduct involving dishonesty, fraud, deceit or misrepresentation." By filing his 2014 Certificate of Compliance with the Supreme Court, which included misrepresentations relating to the Respondent's law practice books and records, the Respondent admitted he engaged in conduct involving dishonesty, fraud, deceit, or misrepresentation in violation of Rule 8.4(c).[51]

**Count XII:** Rule 8.4(d) provides that it is professional misconduct for a lawyer to "engage in conduct that is prejudicial to the administration of justice." The Supreme Court relies upon the representations made by attorneys in the Certificates of Compliance and Annual Registration Statements in the administration of justice governing the practice of law in Delaware. By filing with the Supreme Court his 2014 Certificate of Compliance which included misrepresentations relating to the Respondent's law practice books and records, the Respondent violated Rule 8.4(d).[52]

V. *Findings on Sanctions*

1.      Eugene Maurer, Esquire, who has served as the Respondent's practice monitor since July 2018, testified on behalf of the Respondent.[53] Mr. Maurer testified that, since the Respondent's return to practice as an employee of Mr. Maurer

---

[51] Tr. at 43-44.
[52] Tr. at 28-29.
[53] Tr. at 14.

15

in 2018, the Respondent has been cooperative and compliant with the Court's conditions on his practice,[54] and the Respondent is known by Mr. Maurer and other lawyers to have good character and a good reputation.[55]

2.    The report of Carol Waldhauser, Executive Director of DE-LAP, shows the Respondent entered into a Voluntary Formal Monitoring agreement with DE-LAP on November 1, 2016, and an Amended Formal Monitoring Agreement on March 6, 2018.[56] The Respondent was affected by personal or emotional problems, including "anxiety, isolation, grief[,] alcohol abuse disorder" and "procrastination."[57] The Respondent has been compliant and cooperative with DE-LAP since 2016.[58] The Respondent's random screenings for alcohol were negative.[59] The Respondent was compliant with the DE-LAP's monitoring, including "Talk Therapy,"[12] "Step Fellowship," "Wellness/YOGA," and meeting with a mental health counselor, Alice O'Brien.[60] Ms. O'Brien's letter dated February 11, 2019 was admitted as evidence.[61]

---

[54] Tr. at 15-16.
[55] Tr. at 19.
[56] See Ex. 13.
[57] See Ex. 13 at 2-3.
[58] Id.; Tr. at 93-94.
[59] Id.
[60] Tr. at 94-95.
[61] See Ex. 12.

16

3.	The Respondent testified he was experiencing personal or emotional problems at the time he engaged in the instant misconduct, including the passing of his mother[62] and alcohol abuse.[63]

4.	The Respondent did not have selfish of dishonest motives for his misconduct and, in fact, admitted his ineffective representation on several occasions in order to attempt to rectify the consequences of his misconduct.[64]

5.	The Respondent made full and free disclosure of his misconduct to ODC, and he has been fully cooperative with the disciplinary process,[65] DE-LAP,[66] and the recommendations of his mental health counselor, Alice O'Brien.[67]

6.	The Respondent expressed remorse for his misconduct.[68]

7.	The Respondent acknowledged having been privately admonished by the Preliminary Review Committee in September 2011, based upon his admission to the following misconduct and Rules violations in connection with his representation of a criminal defendant: (1) the Respondent failed to provide competent and diligent representation by failing to timely file a motion for modification of sentence (Rules

---

[62] Tr. at 49.
[63] Tr. at 50-51.
[64] Tr. at 53-55, 60-62.
[65] Tr. at 64-66.
[66] Tr. at 66-68.
[67] Tr. at 67-.68
[68] Tr. at 64-68.

1.1 and 1.3);[69] (2) the Respondent failed to communicate with the client;[70] (3) the Respondent failed to provide a written fee agreement (Rule 1.5(f));[71] and (4) the Respondent received an advance fee and deposited it directly into his operating account prior to earning the full fee (Rule 1.15(a)). [72]

## VI. *Recommended Sanction*

At the Hearing and in the Joint Memorandum, ODC and the Respondent jointly recommended the sanction of a suspension for eighteen months, retroactive to November 20, 2014, together with a one-year forward-looking period of probation with conditions, commencing upon reinstatement, as the appropriate sanction based on the facts, the ABA Standards, and Delaware case precedent. For the reasons which follow, the Panel recommends that sanction.

## VII. *Rationale for Recommended Sanction*

In making its recommendation, the Panel has utilized the four-part framework set forth in the ABA Standards for Imposing Lawyer Sanctions (1991 as amended February 1992)("ABA Standards"). To promote consistency and predictability in the imposition of disciplinary sanctions, the Delaware Supreme Court looks to the ABA Standards. *In re Doughty*, 832 A.2d 724, 735-736 (Del. 2003)(citations

---

[69] Tr. at 70-72 and Ex. 11.

[70] Tr. at 72 and Ex. 11.

[71] Tr. at 71-72 and Ex. 11.

[72] Tr. at 71 and Ex. 11.

18

omitted).  The ABA Standards' framework considers: (1) the ethical duty violated; (2) the lawyer's state of mind; (3) the actual or potential injury caused by the lawyer's misconduct; and (4) aggravating and mitigating factors.  *Id.*

## A. Nature of the Duties Violated

The Respondent violated duties owed to clients, the profession, and the legal system.

Violations of Rules 1.1, 1.3, 1.4, 1.15(a) and 1.15(d) are breaches of duties owed to clients.  ABA Standard 4.42 pertains to an attorney's lack of diligence and states, "suspension is generally appropriate when:... a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client...."[73] The Respondent informed Mr. Zambrana he would file an appeal but did not do so. Standard 4.12 addresses a lawyer's failure to preserve client property and states, "suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client."  The Respondent failed to safeguard the funds of three clients when he deposited unearned fees in his operating account, even after having been disciplined for identical misconduct in 2011.

---

73 ABA Standard 4.42.

A violation of Rule 1.15(d) is a breach of duty owed to the profession.[74] The applicable standard for violation of a duty owed to the profession is ABA Standard is 7.2, which provides, "suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed as a professional, and causes injury or potential injury to a client, the public or the legal system."[75]

Violation of Rule 3.4(c), 8.4(c) and 8.4(d) involve duties owed to the legal system.[76] The applicable standard for violation of a duty owed to the legal system, Standard 6.22, states that "suspension is appropriate when a lawyer knowingly violates a court...rule, and there is injury or potential injury to a client...."[77]

### B. The Respondent's Mental State

The Respondent acted knowingly with respect to some of the violations. The Respondent was the managing partner of his solo law firm, and thus the Respondent was aware of his professional obligation to ensure his books and records were kept in compliance with Rule 1.15.[78] The Respondent was also aware he was obligated to annually file a Certificate of Compliance with the Delaware Supreme Court to ensure he was maintaining his books and records correctly.[79] The Respondent was

---

[74] ABA Standard 7.2.
[75] ABA Standard 7.2.
[76] ABA Standard 6.0.
[77] ABA Standard 6.22.
[78] Tr. at 40-41.
[79] Tr. at 42.

20

further aware of the need to keep safe client funds and provide written fee agreements because he had been previously disciplined for Rule 1.15(a) and Rule 1.5(f) violations in 2011. He was aware that his answers to the 2014 Certificate of Compliance were incorrect, in violation of Rule 8.4(c) and 8.4(d).[80] Therefore, misconduct meets the sanctions definition of "knowledge" set forth in the ABA Standards, which is "the conscious awareness of the nature or attendant circumstances of the conduct, but without the conscious objective or purpose to accomplish a particular result."[81]

Additionally, the Respondent admitted that he "knowingly violated Rule 3.4(c)"[82] under the standard set forth in Rule 1.0(f),[83] which denotes actual knowledge of the fact in question, inasmuch as he was "absolutely" aware Supreme Court Rule 26(a) required the docketing of an appeal.[84] At the time of the Rules violations at issue, the Respondent had practiced criminal law for eighteen years[85]

---

[80] Tr. at 43-44.

[81] ABA Standards at 9; *see also In re Lassen*, 672 A.2d 988 (Del. 1996)(finding knowledge can be inferred from the circumstances).

[82] Tr. at 39-40.

[83] Rule 1.0(f) provides "'Knowingly,' 'known,' or 'knows' denotes actual knowledge of the fact in question. A person's knowledge may be inferred from circumstances." *See also In re Bailey*, 821 A.2d 851, 863 (Del. 2003)(finding "knowing" misconduct can be inferred from the circumstances because a person is presumed to intend the natural consequences of his or her actions).

[84] Tr. at 32.

[85] Tr. at 27.

and filed thirty-five or more direct appeals.[86]  He handled ten prior postconviction motions.[87]  Yet, in the Zambrana matter, the Respondent's state of mind could be viewed as negligent because he agreed to file the appeal and intended to so do, but mismarked the 30-day appeal period on his calendar, so that the day he marked as the appeal deadline was actually the 31st day after sentencing.[88]  Unfortunately, it was not until he sat down to draft the notice of appeal on the day that he had marked as the appeal deadline that he recounted the appeal period and realized that he had missed the deadline by one day.[89]

### C. Actual or Potential Injury

The Respondent's misconduct caused actual and potential injury to his clients, the profession, and the legal system.  The ABA Standards define "injury" as "harm to a client, the public, the legal system or the profession which results from a lawyer's misconduct."[90]  The Commentary to ABA Standard 3.0 provides, "[t]he injury resulting from the lawyer's misconduct need not be actually realized; in order to protect the public, the court should also examine the potential for injury caused by the lawyer's misconduct."[91]  "Potential injury" is defined as the "harm to a client,

---

[86] Tr. at 29.
[87] Tr. at 44-45.
[88] Tr. at 37, 59-60.
[89] Tr. at 59-60.
[90] ABA Standards at 27.
[91] ABA Standards at 27.

22

the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct." [92]

The Respondent's neglect caused actual injury to Mr. Zambrana in terms of the delay of Mr. Zambrana's appeal. Mr. Zambrana was about twenty-five years old, new to the criminal justice system, and sentenced to six months in jail. [93] The Respondent failed to file the appeal. [94] Mr. Zambrana felt angry, [95] as the filing of his appeal was delayed. Moreover, although the Respondent discovered he failed to file the Zambrana appeal the day after he missed the deadline for filing of the notice of appeal in the Supreme Court, [96] he did not bring his error to the attention of the Superior Court for nine months thereafter. [97] The Respondent's neglect also caused actual injury to the legal system because the Superior Court wasted judicial resources when it was required to remedy the effects of the Respondent's professional misconduct. Specifically, the Superior Court had to contact the Respondent when he failed to file a Motion to Withdraw in the Thomas matter [98] and had to resentence

---

[92] ABA Standards at 27.
[93] Tr. at 65-66.
[94] Tr. at 59-61, 65-66.
[95] Tr. at 65-66.
[96] Tr. at 58-61, 75-71 and Ex. 7.
[97] Tr. at 75-77 and Ex. 7.
[98] Tr. at 57-58.

23

Mr. Zambrana when the Respondent missed the deadline for filing the appeal.[99] It is noteworthy, however, that in each of the three matters at issue, Burroughs, Thomas, and Zambrana, the motions and appeals in question were ultimately heard on the merits and ruled upon, in part as a result of actions taken by the Respondent to avoid further injury to his clients.[100]

The Respondent's failure to safeguard client funds caused actual and potential injury to clients. In addition, the Respondent's failure to fulfill his supervisory duty to ensure the firm's books and records were maintained created the potential for serious injury to clients and third parties.[101] Finally, the Respondent's misrepresentations on his 2014 Certificate of Compliance resulted in actual and potential injury to the legal system.[102] However, there is no evidence of actual financial injury to or loss by clients or third parties with respect to Respondent's violations of the Rules with respect to his books and records and his Certificate of Compliance.

---

[99] Tr. at 59-60 and Exs. 7 and 8.

[100] Tr. 53-61.

[101] See In re Benson, 774 A.2d 258, 262-263 (Del. 2001)(stating "A lawyer's duty to maintain proper books and records exists for the purpose of protecting not only the lawyer but the lawyer's clients, and the failure to fulfill that duty presents serious risks to the lawyer's clients, even if no actual harm results").

[102] See In re Gray, 152 A.3d 581 (Del. 2016)(finding there was actual injury where Court believed Respondent was in compliance when he was not and violation came to light during a Lawyer's Fund for Client Protection Audit).

24

## D. Aggravating and Mitigating Circumstances

Based on the Respondent's knowing and other misconduct which violated duties to clients, the profession, and the legal system and resulted in actual and potential harm, the presumptive sanction is suspension.[103] The Panel must then consider aggravating and mitigating circumstances in determining whether to depart from the presumptive sanction.[104]

Three aggravating factors[105] apply to the Respondent's misconduct: (1) the Respondent had a prior disciplinary offense;[106] (2) the Respondent engaged in multiple offenses;[107] and (3) the Respondent has substantial experience in the practice of law.[108]

Six mitigating factors[109] apply to the Respondent's misconduct: (1) absence of a dishonest or selfish motive;[110] (2) personal or emotional problems;[111] (3) timely

---

[103] *See* ABA Standard 7.2 (providing "Suspension is generally appropriate when a lawyer knowingly engages in conduct that is a violation of a duty owed to the profession, and causes injury or potential injury to a client, the public, or the legal system").

[104] ABA Standard 9.1.

[105] *See* generally ABA Standard 9.22.

[106] ABA Standard 9.22(a) and Ex. 11.

[107] ABA Standard 9.22(d).

[108] ABA Standard 9.22(i); Tr. at 27-28.

[109] ABA Standard 9.32.

[110] ABA Standard 9.31(b); Tr. at 53-55, 60-62.

[111] ABA Standard 9.31(c); Tr. at 49, 50-51.

25

good faith effort to rectify the consequences of misconduct; [112] (4) full and free disclosure to the disciplinary board and cooperative attitude toward proceedings; [113] (5) character or reputation; [114] and (6) remorse. [115] Specifically, the Panel commends the Respondent for his response in taking responsibility for individual mistakes and seeking to address a difficult situation overall.

Nevertheless, the Panel agrees with ODC and the Respondent that, despite the presence of significant mitigating factors, a decrease from the presumptive sanction of suspension is not warranted under all the circumstances.

### E. Delaware Precedent

Consistent with Delaware case precedent, [116] the Panel believes that its recommended sanction of suspension for eighteen months, retroactive to November 20, 2014, the date when the Respondent was transferred to disability inactive status, as well as a forward-looking one-year period of probation with conditions taking effect upon reinstatement following the resolution of these proceedings, is appropriate. The Supreme Court has imposed suspensions when lawyers neglected

---

[112] ABA Standard 9.31(d); Tr. at 49, 50-51.

[113] ABA Standard 9.31(e); Tr. at 64-68.

[114] ABA Standard 9.31(g); Tr. at 19.

[115] ABA Standard 9.31(l); Tr. at 64-68.

[116] *See In re Reardon*, 759 A.2d 568, 580 (Del. 2000) (finding the Supreme Court looks to relevant Delaware precedent to ensure the sanction imposed is consistent with sanctions imposed in similar prior disciplinary cases).

26

clients, failed to safeguard client funds by depositing unearned advance fees directly into operating accounts, violated court rules, failed to maintain books and records, and misrepresented the status of books and records on Certificates of Compliance.

*In re Carucci* involved violations of Rules 1.1, 1.3, 1.15(a), 1.15(d), 8.4(c) and 8.4(d), and the Supreme Court imposed an eighteen-month suspension on the lawyer. 132 A.3d 1161 (Table)(Del. 2016). Mr. Carucci failed to competently and diligently represent eleven clients by failing to file appropriate pleadings on their behalf, deposited clients' advance fees directly in his operating account prior to earning the full fee, failed to maintain his books and records, and misrepresented the status of his books and records on his Certificate of Compliance. *Id.* at 2-9. Mr. Carucci admitted the facts and Rules violations alleged. *Id.* Several aggravating factors applied: a pattern of misconduct, multiple offenses, and substantial experience in the practice of law. *Id.* at 12. Numerous mitigating factors also applied: absence of prior disciplinary history, absence of a dishonest or selfish motive, personal or emotional problems, good effort to rectify the consequences of the misconduct, cooperation with the disciplinary process, character or reputation, and remorse. *Id.* at 13. Like the Respondent here, Mr. Carucci had been on disability inactive status for a substantial period of time (two years) at the time of the disciplinary proceedings. *Id.* at 10. Still, based on the nature of the ethical duties violated, Mr. Carucci's knowing state of mind, the actual or potential injury caused

27

by his misconduct, and after weighing the aggravating and mitigating factors, the Court found an eighteen-month suspension, retroactive to the date of Mr. Carucci's transfer to disability inactive status, was the appropriate sanction. *Id.* at 1.

The Panel agrees with ODC and the Respondent that *In re Carucci* is the case most analogous to the case *sub judice*, as it involves both client neglect and books and records violations. Yet, the parties correctly noted that client neglect, in the absence of books and records violations, is a basis for suspension, citing *In re Shirley McDermott-Lundin*, in which the Court imposed a two-year suspension on a lawyer for violating Rules 1.1, 1.3, and 1.4. 956 A.2d 642 (Del. 2008). While Ms. McDermott-Lundin's misconduct was limited to not responding to clients or keeping them informed of the status of their cases, the Court imposed a suspension of two years retroactive to the date Ms. McDermott-Lundin was suspended. *Id.*

Similarly, the Court imposed a two-year suspension on a lawyer for violating Rules 1.3, 1.4, 1.16(d), 3.1, 3.4(c), 8.1(b), and 8.4(c) in *In re Carmine.* 559 A.2d 248 (Del. 1989). Mr. Carmine neglected four client matters, failed to keep clients informed of the status of their cases, failed to perfect an appeal, failed to file a complaint, misrepresented the status of cases to clients, violated a court rule, failed to surrender his file to successor counsel, and failed to respond to a lawful demand for information from ODC. *Id.* The following aggravators applied: prior disciplinary history, a pattern of misconduct, and substantial experience in the

28

practice of law; the following mitigating factors also applied: personal or emotional problems, extensive efforts to rehabilitate himself through counseling, attempts to rectify the damage caused by his misconduct, cooperative attitude towards disciplinary proceedings, and remorse. *Id.* at 254-55. After considering the aggravating and mitigating factors, including Mr. Carmine's voluntary practice limitations, and the serious nature of the violations, the Court imposed a two-year suspension. *Id.* at 255.

Delaware precedent also demonstrates that books and records violations and the violation of court orders, in the absence of client neglect, are a basis for suspension. *In re Nowak*, 5 A.3d 631 (Del. 2010)(imposing a one-year suspension for violating Rules 1.15(a), 1.15(d), 5.3, 8.4(c) and 8.4(d)). Mr. Nowak admitted the facts and Rules violations for failing to safeguard client funds, failed to maintain his books and records, misrepresented the status of his books and records, failed to supervise his assistants, and made misrepresentations on his Certificates of Compliance. *Id.* at *5-6. The following aggravating factors applied: pattern of misconduct, multiple offenses, and substantial experience in the practice of law; the following mitigating factors also applied: the absence of a dishonest motive, existence of personal or emotional problems, full and free disclosure to the disciplinary board, cooperation with disciplinary proceedings, and remorse. *Id.* at *8-9. As with the Respondent and Mr. Carucci, Mr. Nowak had been on disability

29

inactive status for a substantial period of time at the time of the disciplinary proceedings. *Id.* at 2. Nevertheless, based on the nature of the ethical duties violated, Mr. Nowak's knowing mental state and the potential for injury, and after weighing the aggravating and mitigating factors, the Court found a one-year suspension retroactive to the date of Nowak's transfer to disability inactive status was the appropriate sanction. *Id.* at *1.

Similarly, the Court has imposed a two-year suspension on an attorney who violated Rules 1.5(f), 1.15(a), 1.15(d), 3.4(c), 8.1(a), 8.4(c), and 8.4(d). *In re Barakat*, 99 A.3d 639 (Del. 2013). Mr. Barakat failed to safeguard clients' funds by failing to deposit unearned funds in a client trust account, failed to maintain his books and records, misrepresented the status of his books and records on his Certificate of Compliance, violated a court rule, and knowingly made a false statement in connection with a disciplinary matter. *Id.* The following aggravating factors applied: dishonest or selfish motive, pattern of misconduct, multiple offenses, false or misleading statements, substantial experience in the practice of law, and refusal to acknowledge the wrongful nature of the misconduct; and the following mitigating factors applied: the absence of a prior disciplinary history and cooperative attitude. *Id.* at 648. Given on the nature of the duties violated, Barakat's knowing state of mind, and considering the aggravators and the mitigators, the Court imposed a two-year suspension. *Id.* at 648.

Like the matters of *Carucci* (suspended for eighteen months), *McDermott-Lundin*, (suspended for two years), and *Carmine* (suspended for one year), Respondent engaged in significant client neglect. Although Mr. Carucci's case involved eleven clients, more than the Respondent's case involving three, Mr. Carucci did not violate a court rule or have a prior disciplinary history, unlike the Respondent. Mr. Carmine's case involved neglect of four clients, violation of a court rule, failure to surrender a file to successor counsel, and failure to cooperate with ODC. However, unlike the Respondent, Mr. Carmine (and Ms. McDermott-Lundin) did not fail to safeguard client funds or maintain books and records. Like the matters of *Carucci* (suspended for eighteen months), *Nowak* (suspended for one year), and *Barakat* (suspended for two years), the Respondent also failed to safeguard client funds, failed to maintain his books and records, and misrepresented the status of his books and records on his Certificate of Compliance. While Mr. Nowak had knowledge of the deficiencies in his books and records based on a prior audit and invaded client trust funds, Mr. Nowak did not engage in client neglect, violate a court rule, or have a prior disciplinary history. While Mr. Barakat violated a court rule and failed to cooperate with ODC, he did not have a prior disciplinary record. With the aforementioned matters viewed cumulatively, an eighteen-month period of suspension is consistent with Delaware case precedent involving both client neglect and books and records violations the appropriate sanction and remains appropriate

31

despite the presence of significant mitigating factors.

The Panel agrees that the Respondent's 2011 discipline is a significant aggravating factor because it involved identical misconduct: failing to safeguard the client's funds by depositing an unearned advance fee directly in an operating account; failing to provide the client with a written fee agreement; failing to communicate with a client; and failing to timely file a motion related to the client's criminal sentence.[117] The Court has previously determined that sanctions should be increased where a respondent previously engaged in comparable misconduct.[118] Thus, the Respondent's prior discipline involving identical misconduct does not warrant a decrease from the eighteen-month suspension imposed in *Carucci*.

The matters of *Nowak* and *Carucci* are also instructive as cases in which the court-imposed suspension was retroactive to the date of the lawyer's transfer to disability inactive status. *Carucci*, 132 A.3d 1161; *Nowak*, 5 A.3d 631; *see also In*

---

[117] Tr. at 72 and Ex. 11.

[118] *See In re Beauregard*, 189 A.3d 1236 (Del. 2018); *In re Wilson*, 886 A.2d 1279 (Del. 2005); *In re Dodge*, 2002 WL 999969, *6-7 (Del. 2002); *In re Autman*, 798 A.2d 1042 (Del. 2002); *In re John Benge*, 754 A.2d 871, 880 (Del. 2000); *In re Dennis A. Reardon*, 759 A.2d 568 (Del. 2000); *In re McCann*, 669 A.2d 49, 51-52 (Del. 1995); *In re Mekler*, 669 A.2d 655 (1995); and *In re Tos*, 576 A.2d 607 (Del. 1990); *see also* ABA Standard 8.3(b) (providing "Reprimand is generally appropriate when a lawyer... has received an admonition for the same or similar misconduct and engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession").

32

*re Cairns*, 132 A. 3d 1160 (Del. 2016); *In re Amalfitano*, 931 A.2d 1006 (Del. 2007).

The Panel recognizes the practical effect of imposing a suspension retroactive the Respondent's transfer to disability inactive status, November 20, 2014, will be that the Respondent will have already served his suspension at the time the Court enters its Order, should the Court find the recommendation appropriate. However, that is not a basis for reducing a suspension period otherwise consistent with Delaware case precedent, as the length of time a lawyer is removed from the practice of law, by operation of his transfer to disability inactive status, cannot be considered in determining the appropriate sanction. *In re Amalfitano*, Del. Supr., No. 700, 2002, Berger, J. (June 8, 2004)(CONFIDENTIAL ORDER):

> A lawyer may not use the time he was on disability/inactive status to avoid a period of suspension for his misconduct...[T]he disciplinary matters have been stayed, not dismissed or otherwise satisfied. Thus, the time during which Amalfitano is on disability inactive status will not be considered in determining an appropriate sanction for his misconduct.

*See also Carucci*, 132 A.3d 1161 (retroactive suspension imposed, with the length of suspension not reduced due to disability inactive status); *Nowak*, 5 A.3d 631.

Consistent with Delaware precedent, the Panel recommends an eighteen-month suspension, retroactive to the date the Respondent was transferred to disability inactive status, November 20, 2014, as well as a one-year, forward-looking period of probation with conditions to commence upon reinstatement after the

33

conclusion of these disciplinary proceedings.

VIII. *Conclusion*

The Board recommends to the Supreme Court of Delaware the following:

(1) That the Court issue an Order imposing an eighteen-month suspension, retroactive to November 20, 2014, the date Respondent transferred to disability inactive status, as well as a one-year, forward-looking period of probation with conditions, to commence upon Respondent's reinstatement after the conclusion of these disciplinary proceedings (the "Order");

(2) That the following conditions apply during the Respondent's aforementioned one-year period of probation:

a. Respondent is prohibited from engaging in the solo practice of law.

b. Respondent shall not act as managing partner in charge of books and records of a firm. After the expiration of the probation period, Respondent shall notify the ODC if he resumes responsibility for the books and records of the firm.

c. Respondent shall meet on a monthly basis with a mutually agreed upon practice monitor who will closely review Respondent's legal work and cases and the practice monitor would provide quarterly reports to ODC regarding Respondent's compliance with the conditions of reinstatement.

d. Respondent shall notify any employer of these conditions.

e. Respondent shall continue to cooperate with DE-LAP pursuant to a formal monitoring agreement and comply with all conditions deemed appropriate by DE-LAP.

34

f.  Respondent shall continue counseling with Alice O'Brien, or another appropriate, licensed mental health professional approved by DE-LAP, at whatever intervals are deemed appropriate or until discharged by, the mental health professional and complete all therapy programs recommended by the mental health professional. Respondent shall execute a waiver of the doctor-patient privilege so that the mental health professional may provide a report to DE-LAP and ODC. Any missed appointments are to be reported immediately to DE-LAP and ODC.

g.  Respondent must pay costs to ODC.

h.  Respondent must timely file all required reports to the Supreme Court and its regulatory agencies and promptly comply with, or respond to, all inquiries or requests for information from all Supreme Court agencies. Respondent's failure to do so will result in a violation of this condition.

i.  Respondent shall report any violations of the conditions of his reinstatement to the ODC directly.

j.  Respondent shall cooperate promptly and fully with ODC in its efforts to monitor compliance with his conditions of reinstatement. Respondent shall cooperate with ODC's investigation of any allegations of unprofessional conduct which may come to the attention of ODC. Upon request of ODC, Petitioner shall provide authorization for release of information and documentation, to the extent not granted above, to verify compliance with the conditions of reinstatement.

(3) That the Order stay its effectiveness pending the Court's consideration of the Respondent's petition for reinstatement, during which time Respondent shall remain subject to the conditions of the Court's February 22, 2018 Order transferring him to active status;

35

(4) That the Order go into effect on the date of the Court's final decision on the Respondent's petition for reinstatement, such that, if Respondent is reinstated, the retroactive period of suspension will have been satisfied and the one-year period of probation, with its conditions, will commence upon Respondent's reinstatement.

Respectfully submitted,

_____
Seth L. Thompson, Esquire, Chair
Date: 6/3/19

_____
Gerald J. Hager, Esquire
Date: 5/30/2019

_____
Gary Ferguson
Date: _____

37

transferring him to active status;

(4) That the Order go into effect on the date of the Court's final decision on the Respondent's petition for reinstatement, such that, if Respondent is reinstated, the retroactive period of suspension will have been satisfied and the one-year period of probation, with its conditions, will commence upon Respondent's reinstatement.

Respectfully submitted,

_____
Seth L. Thompson, Esquire, Chair
Date:_____

_____
Gerald J. Hager, Esquire
Date:_____

_____
Gary Ferguson
Date: 5/3/2019

38